# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GERALD D. BUNNER**, | Case No. 6:16-cv-2370 |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **NANCY A. BERRYHILL**, Commissioner of Social Security, | |
| Defendant. | |

Brent Wells and Kathryn Tassinari, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette, Suite 200, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Lisa Goldoftas, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Mr. Gerald D. Bunner seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Mr. Bunner's application for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons

discussed below, the Commissioner's decision is REVERSED and REMANDED for a calculation of benefits.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff applied for DIB on April 7, 2013, alleging disability beginning on November 1, 2012. The Commissioner denied his initial application, AR 158, and Plaintiff's request for review. AR 172. Plaintiff requested a hearing with an Administrative Law Judge ("ALJ"). AR 178. On August 18, 2015, the ALJ found Plaintiff not disabled. AR 15. Plaintiff was subsequently denied review of the ALJ's decision by the disability Appeals Council on October 27, 2016, making the ALJ decision the final administrative decision. AR 1. Plaintiff now seeks review of the ALJ's decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

Before the ALJ found Plaintiff to be not disabled under the meaning of the Social Security Act, the ALJ applied the sequential analysis. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 1, 2012, the alleged onset date of his disability. AR 17. At step two, the ALJ found that Plaintiff has the following severe impairments: (1) status post left ankle allograft reconstruction and degenerative joint disease; (2) mild cervical degenerative disc disease with radiculopathy; (3) lumbar degenerative disc disease with radiculopathy; (4) diabetes mellitus; (5) diabetic peripheral neuropathy; (6) obesity; (7) persistent depressive disorder; (8) social anxiety disorder; and (9) anti-social personality disorder. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments. *Id*. at 21-23.

The ALJ next assessed Plaintiff's RFC. The ALJ found Plaintiff has an RFC to perform sedentary work with the following restrictions:

> he require [sic] the option to sit stand at will, but he will remain on task while doing so. The claimant also requires a cane to ambulate, but he is able to lift/carry 10 pounds. Furthermore, he is limited to occasional use of foot pedals bilaterally. The claimant's residual functional capacity includes a limitation to occasional climbing of ramps and stairs, but no climbing of ropes, scaffolds, or ladders. Additionally, he has a restriction to occasional balancing and stooping, but he cannot kneel, crouch, or crawl. He cannot be exposed to vibration or to hazards, such as unprotected heights and moving mechanical parts. The claimant is limited to simple and routine tasks, which can be learned in 30 days or less with simple work-related decisions. He is also limited to occasional, but not frequent interaction with supervisors and superficial interaction with coworkers and the public, with "superficial" defined as casual or perfunctory.

*Id.* at 21.

Based on Plaintiff's RFC, the vocational expert ("VE") testified that Plaintiff could not perform any of his past relevant work. AR 82. Given a hypothetical person who can only perform simple tasks, ambulates with a cane, has limited climbing and no ladder climbing abilities, and can sit for six hours and stand for two hours on task during an eight-hour workday, the VE testified there were jobs in the national economy that could be performed, including eyeglass or frames polisher, document preparer, and film touch-up inspector. AR 87. Thus, the ALJ concluded at step five that Plaintiff was not disabled. AR 29.

## DISCUSSION

Plaintiff seeks review of the ALJ's determination that he is not disabled. He argues that the ALJ erred in: (1) improperly discounting Plaintiff's testimony; and (2) failing to give the proper credit to Janet Kadlecik, OTRL, and Donald Mackay, MD.

### A. Plaintiff's Credibility

Plaintiff argues that the ALJ erred in failing to provide clear and convincing reasons for finding that Plaintiff's testimony was not credible. Specifically, he asserts that the ALJ erred by: (1) finding Plaintiff's testimony inconsistent; (2) improperly discrediting medical testimony that

PAGE 6 – OPINION AND ORDER

corroborated Plaintiff's testimony; and (3) finding Plaintiff's daily living activities inconsistent with Plaintiff's testimony. There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom

testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ provided three reasons for discounting Plaintiff's testimony—that there were inconsistencies in Plaintiff's allegations, that Plaintiff's daily living activities demonstrate that he is not as limited as he claims, and that the medical records do not support his allegations. Each reason is addressed is turn.

### 1. Inconsistencies

The ALJ identified three examples of what the ALJ found to be inconsistencies in Plaintiff's allegations: (1) Plaintiff used crutches while recovering from his most recent left ankle surgery despite saying he needs to use a cane; (2) Plaintiff sheds his cane to mow a 20 foot by 20 foot patch of lawn with a self-propelled lawnmower; and (3) Plaintiff goes to the movies despite having social anxiety. The ALJ found that these facts suggest abilities beyond the restrictions alleged by Plaintiff.

With respect to Plaintiff's use of crutches after surgery, the Court finds the ALJ's inference to be irrational. Plaintiff's use of crutches instead of a cane after his surgery does not support the conclusion that he experiences less pain from ambulating than what he claims. As Plaintiff points out, using a crutch is similar to using a cane, as it provides support, balance, and stability. Further, the Court notes that crutches suggest an even greater difficulty ambulating. Because the ALJ's conclusion was the result of an irrational interpretation of the record, this conclusion cannot be a clear and convincing reason to discount Plaintiff's credibility.

Regarding Plaintiff's use of a self-propelled lawnmower as evidence contrary to his testimony that he needs a cane, the Court does not find that the ability to mow a small lawn, which Plaintiff testified takes five minutes, with the support of a self-propelled lawn mower is necessarily inconsistent with the need to use a cane while ambulating. The lawn mower itself

PAGE 8 – OPINION AND ORDER

provides some additional support and stability beyond what a person has while walking without any assistance. Thus, this purported inconsistency is not a clear and convincing reason to discount Plaintiff's credibility.

The ALJ's finding that Plaintiff's visits to movie theaters conflicts with his alleged social anxiety, however, is a rational interpretation of the record. It was not unreasonable for the ALJ to conclude that a movie theater would exacerbate social anxiety. A theater might have many attendees, which Plaintiff would not be able to predict when purchasing his ticket. Although "a claimant need not 'vegetate in a dark room' in order to be eligible for benefits," *Molina*, 674 F.3d at 1112-13 (quoting *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987)), this activity was sufficient to present an inconsistency with Plaintiff's claimed limitations. Because the ALJ provided an example of an inconsistency in Plaintiff's allegations regarding his claimed limitations, the ALJ provided a clear and convincing reason to discount Plaintiff's testimony.

   2. Medical Evidence

The ALJ concluded that the medical evidence did not support Plaintiff's alleged limitations. The ALJ is responsible for resolving ambiguities in the record and conflicting testimony. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Still, the ALJ must use the entire record and cannot cherry-pick sentences or phrases while ignoring the greater context. *Garrison v. Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014). The ALJ found that evidence from a July 2013 emergency room visit contradicted Plaintiff's testimony regarding his pain. The ALJ notes that "the doctor concluded [Plaintiff's] gait was good." AR 24. The ALJ, however, omits the full phrase of "reasonably good," which suggests something less than good. Additionally, the ALJ does not note the impression from that visit that Plaintiff suffers from "acute exacerbation of chronic pain." AR 540. This medical impression is the symptom Plaintiff explained when he said he used the cane because occasionally "and all of a sudden, [there's] just a shooting pain

PAGE 9 – OPINION AND ORDER

right in the joint of the left ankle." AR 63. The nature of acute exacerbation is that the symptom is not always present and has a sudden, often spontaneous, onset. That Plaintiff was able to ambulate at some points in time or was not in pain at any given moment does not contradict this testimony.

The ALJ further mischaracterizes the record relating to Plaintiff's neck and his ankle. The ALJ first cites a July 2013 x-ray of Plaintiff's neck that "did not show any significant disease" while ignoring a February 2014 MRI showing disc bulges between the c3-c4 vertebrae as well as disc bulges, osteophyte complex, and a flattening of the spinal cord between c6-c7 vertebrae. AR 733-34. Moreover, it is error for an ALJ to simply rely on "the mildness" of spinal imaging in assessing functional limitations due to pain. *See Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017). Next the ALJ states that Plaintiff's neurovascular status was "intact." AR 24. Having an intact neurovascular status merely means that Plaintiff can wiggle his toes, has sensation, and has warm skin. Discounting pain testimony because Plaintiff has functional nerves and blood vessels is not clear and convincing evidence.

The ALJ summarizes Plaintiff's ankle condition from February 2015 as "doing well with his reconstructed left ankle while the right ankle was 'extremely stable.'" AR 24. The ALJ then states: "While the doctor agreed the claimant could use a wheelchair, he actually only ordered ankle braces." *Id*. In reviewing the records from that visit, however, the Court could not find where the doctor stated that Plaintiff was doing well with his left ankle. Instead, the doctor notes that the surgical wound was doing well, without making a statement on the ankle itself. From the same visit, the ALJ is correct that the doctor only ordered ankle braces despite agreeing claimant should have a wheelchair. The ALJ glosses over the prior sentence, however, which says that Plaintiff already has a wheelchair that he uses for long distances. A failure to order a second

wheelchair for Plaintiff is not evidence that he does not need one and does not contradict Plaintiff's testimony regarding his pain and difficulty ambulating. The ALJ's discussion of Plaintiff's medical records is not a clear and convincing reason to discount Plaintiff's testimony.

### 3. Daily Living Activities

The Ninth Circuit has held that a claimant can perform some activity during his daily life while disabled. *See, e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled.")). "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Whitman v. Berryhill*, 2017 WL 2180519, at *9 (S.D. Cal. May 18, 2017), *report and recommendation adopted*, 2017 WL 2972645 (S.D. Cal. July 12, 2017) (noting that disability claimants should not be penalized for trying to live normal lives and endeavoring to maintain "basic human functions that are not determinative of disability").

Plaintiff argues that the ALJ erred in finding that Plaintiff's life activities contradicted his claims. The ALJ found Plaintiff's symptom testimony unconvincing because Plaintiff has the ability to help around the house, sweep, cook dinner, mow his lawn, and fold laundry while watching TV. AR 25. Plaintiff also rides a recumbent bike "three times a week for up to [a half] mile, stopping to talk to neighbors along the route." *Id*. The Court does not agree that Plaintiff's activities, including mowing his lawn, riding his recumbent bike, and talking to his neighbors, presents clear and convincing evidence sufficient to discredit Plaintiff's testimony.

These activities are not the type of activities that typically rebut a claimant's testimony. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding

PAGE 11 – OPINION AND ORDER

that daily activities are inconsistent with testimony about pain." *Garrison*, 759 F.3d at 1016. It would be unreasonable to expect Plaintiff to lie in bed all day, watch his house become overrun by vegetation, allow dirt and piles of clothing to accumulate on the floor, and only ever eat prepackaged food. Daily activities that are necessary for survival are not the kind of extraordinary or surprising activities that would be unexpected from a person with the disabilities alleged. *See, Vertigan*, 260 F.3d at 1050. Plaintiff's minimal exercise (riding a recumbent bike for up to one-half mile), mowing a lawn for five minutes, and performing minimal household chores are not inconsistent with his claimed limitations. Thus, Plaintiff's daily living activities are not a clear and convincing reason to discount his testimony.

**B. The Medical Opinions**

The ALJ gave all opinions offered by treating physicians and non-examining physicians, except one, little to partial weight. AR 25-27. The opinions of consulting physicians Sharon Eder, M.D. and Martin Lahr, M.D. were given "little weight" because they relied on older opinions that were irrelevant to the period Plaintiff alleges disability. AR 26. The opinions of Bill Hennings, Ph.D. and Joshua Boyd, Psy.D. were given "little weight" because, contrary to their findings of non-severe mental impairments, subsequent reports support Plaintiff having "severe mental impairments." *Id*. The opinion of treating physician, Donald Jones, M.D. was given "partial weight" because his letters were only "snapshot opinions regarding temporary limitations." *Id*. The opinion of William McConochie Ph.D. was given weight because his report on Plaintiff's alleged psychological disabilities was consistent with the overall medical evidence. *Id*. at 26-27. The opinions of Alexa Jefferis, M.Ed and Ruthann Duncan, LMFT were given little weight because they relied only on Plaintiff's self-reported symptoms. *Id*. at 27. The opinion of Janet Kadlecik, OTRL was given little weight because she "failed to cite any objective findings."

*Id*. Finally, Dr. Mackay's concurrence with Ms. Kadlecik's findings was given little weight for the same reason. *Id*.

Plaintiff only disputes the ALJ's treatment of the evaluation and report by Ms. Kadlecik and the opinion of treating physician Dr. Mackay. Ms. Kadlecik's evaluation found that Plaintiff could only sit for two to three hours and could only stand for the same period of time during an eight-hour day. When the VE was given Plaintiff's RFC, but with the addition of Ms. Kadlecik's limitation that Plaintiff could sit for no more than three hours in an eight-hour workday and may stand and walk for no more than three hours, the VE testified that such a person would not be able to enter competitive employment. AR 88-89.

Ms. Kadlecik submitted two documents, a Physical Capacities Evaluation ("Evaluation") (AR 1054) and a Physical Capacities Evaluation Report ("Report") (AR 1055-62). The Evaluation appears to summarize the objective findings in the Report. Those findings indicate that Plaintiff is limited to sitting for no more than two to three hours and standing for no more than two to three hours in an eight-hour day. It appears that the Evaluation and Report were kept together in Plaintiff's medical records as one record (they are dated the same date and are part of the same exhibit).

The Commissioner concedes that the ALJ erred in his analysis of the medical evidence by overlooking the Report. The ALJ discredited Ms. Kadlecik's conclusions because she "failed to cite any objective findings in support of [her] conclusions." AR 27. Attached to the Evaluation, however, was the Report, which provided the objective findings that the ALJ found lacking.

Although the government concedes that the ALJ erred in evaluating the medical evidence generally by not considering the Report, the government argues that the ALJ's analysis was "not unreasonable" with respect to Dr. Mackey. The ALJ gave little weight to Dr. Mackay's opinion,

in which he indicated by checking a box that he concurred "with all of the physical capacities and limitations identified in the Physical Capacity Evaluation completed by Janet Kadlecik, OTR/L." AR 1064. The ALJ found that this opinion by Dr. Mackey "failed to present any medical findings to support his agreement." AR 27. The Commissioner defends the ALJ's discrediting of Dr. Mackey's concurrence by arguing that there is no evidence that Dr. Mackay reviewed the Report before he recorded his concurrence.

It is generally presumed that a person reviews and understands the full content of documents before they sign. *Gutierrez v. Astrue*, 2012 WL 234366, at *4 (C.D. Cal. Jan. 24, 2012) (noting that "when a doctor signs off on a medical form that may have been prepared at least in part by another the Court presumes that the doctor read and understood the form and that he or she meant to endorse all of it when he or she signed off on it"); *see also Hutchins v. Bank of Am. , N.A.*, 2014 WL 722098, at *4 (N.D. Cal. Feb. 25, 2014) ("Individuals are presumed to have read the documents they sign and are in their possession."). The Report was attached to the Evaluation and it is unlikely that Dr. Mackey, in attesting that he agrees with *all* of the physical capacities and limitations identified in the Evaluation, did not read the attached, underlying Report. Despite this, the Court recognizes that there is some ambiguity as to whether Dr. Mackay received and read the Report because the statement his checkmark endorses only specifically identifies the Evaluation without reference to the Report. This ambiguity, however, does not require further proceedings or warrant discounting the opinion of Dr. Mackey.

The Social Security Administration gives a treating doctor's opinion "controlling weight" if it is well supported and not contradicted by other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the

record." *Reddick*, 157 F.3d at 725 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* (Apr. 9, 1996)). The ALJ committed error by discounting Dr. Mackay's opinion concurring with Ms. Kadlecik's Evaluation because Dr. Mackay's concurrence was well supported and not contradicted, regardless of whether Dr. Mackey reviewed the Report.

If Dr. Mackay had not reviewed the Report, Dr. Mackay's conclusions are still supported by objective medical evidence. He submitted independent medical findings that would form an adequate basis for his concurrence. For example, as already mentioned, Dr. Mackay ordered an MRI of Plaintiff's spine in February 2014 which revealed disc bulges around the vertebral facet joints c3-c4 and c6-c7, as well as osteophytes and a flattened spinal cord at the c6-c7 facet joint. AR 733-34. Five months later, Dr. Mackay notes Plaintiff's numbness and tingling in his hands "has been progressively worsening for about a year now." AR 714. Accordingly, regardless of whether Dr. Mackay received the Report before endorsing the findings, the ALJ failed to give clear and convincing reasons for rejecting Dr. Mackay's concurrence. The ALJ never addresses Dr. Mackay's impressions, and the only reason Dr. Mackay's concurrence was discounted does not amount to a clear and convincing reason, or even a specific and legitimate reason.

## C. Remand for Award of Benefits

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is

PAGE 15 – OPINION AND ORDER

insufficient to support the Commissioner's decision. *Id.* at 1100. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison*, 759 F.3d at 999. The United States Court of Appeals for the Ninth Circuit articulates the rule as follows:

> The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence. If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual matters have been resolved. In conducting this review, the district court must consider whether there are inconsistencies between the claimant's testimony and the medical evidence in the record, or whether the government has pointed to evidence in the record that the ALJ overlooked and explained how that evidence casts into serious doubt the claimant's claim to be disabled. Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.
>
> If the district court does determine that the record has been fully developed and there are no outstanding issues left to be resolved, the district court must next consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Said otherwise, the district court must consider the testimony or opinion that the ALJ improperly rejected, in the context of the otherwise undisputed record, and determine whether the ALJ would necessarily have to conclude that the claimant were disabled if that testimony or opinion were deemed true. If so, the district court may exercise its discretion to remand the case for an award of benefits. A district court is generally not required to exercise such discretion, however. District courts retain flexibility in determining the appropriate remedy and a reviewing court is not required to credit claimants' allegations regarding the extent of their impairments as true merely because the ALJ made a legal error in discrediting their testimony.

*Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (internal citations and quotation marks omitted).

If it has been determined that the ALJ committed legal error and "the VE's testimony at hearing is clear, unopposed, and uncontradicted . . . . [and the discredited evidence] is credited as true" then a remand for benefits is usually warranted. *Rawa v. Colvin*, 672 F. App'x 664, 668 (9th Cir. 2016); *see also Henderson v. Berryhill*, 691 F. App'x 384, 386 (9th Cir. 2017) ("Vocational expert testimony directly addressing whether an individual with [claimant's] limitations would be able to sustain employment. . . . If the improperly discredited evidence were credited as true, the ALJ would be required to find [claimant] disabled on remand."); *Behling v. Colvin*, 603 F. App'x 541, 543 (9th Cir. 2015) ("Based on the vocational expert's hearing testimony . . . there is substantial evidence to support a conclusion that further proceedings are not required."); *Norris v. Colvin*, 160 F. Supp. 3d 1251, 1284 (E.D. Wash. 2016) ("The VE previously had testified that [claimant] would be unable to return to any of his prior occupations . . . when properly credited, establishe[s] that Mr. Norris would be unable to maintain employment due to his social limitations."); *Peterson v. Comm'r Soc. Sec. Admin.*, 123 F. Supp. 3d 1256, 1265 (D. Or. 2015) ("[When Plaintiff's testimony] is credited, combined with VE testimony . . . the record is fully developed and there are no outstanding issues that require resolution.").

Although there was some inconsistency regarding Plaintiff's limitations with social anxiety, there was no evidence of malingering and the critical issue involves Ms. Kadlecik and Dr. Mackey's opinions, both of which are credible and not based on Plaintiff's subjective testimony. The ALJ committed legal error in his evaluation of the medical evidence. Both Ms. Kadlecik and Dr. Mackay opined that Plaintiff is limited as set forth in the Evaluation.

Additionally, the record is fully developed. There are hundreds of pages of medical records from Dr. Mackay to support his opinion concurring with the limitations identified in the Evaluation. Remanding to confirm whether Dr. Mackay read the Report along with the Evaluation is unnecessary. Considering the third step in the credit-as-true analysis, giving the proper credit to the improperly rejected opinions of Ms. Kadlecik and Dr. Mackey, the VE's testimony necessitates a finding that Plaintiff is disabled. The VE testified that were a hypothetical person limited to work with the restrictions documented in the Evaluation, that person would be "not competitive." AR 89. Had the ALJ considered the Evaluation and credited the opinions of Ms. Kadlecik and Dr. Mackay endorsing the limitations set forth in the Evaluation, then based on the reasoning set forth in the ALJ's opinion and the testimony of the VE, the ALJ would necessarily have found Plaintiff to be disabled under the meaning of the Social Security Act. Accordingly, this case is remanded for an award of benefits.

## CONCLUSION

The Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Act is REVERSED. This case is REMANDED for an award of benefits.

**IT IS SO ORDERED**.

DATED this 30th day of March, 2018.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge